```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

**CHARLES O. KEEN,**

        **Plaintiff,**

  vs.                                      Civil Action 2:13-CV-781
                                                  Judge Graham
                                                  Magistrate Judge King

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

**I. Introduction and Background**

     This is an action instituted under the provisions of 42 U.S.C. §405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for disability insurance benefits.  This matter is now before the Court on plaintiff's *Statement of Errors*, Doc. No. 17, the Commissioner's *Memorandum in Opposition*, Doc. No. 20, and plaintiff's *Reply*, Doc. No. 21.

     Plaintiff Charles O. Keen filed his application for benefits on March 25, 2011, alleging that he has been disabled since March 7, 2008, as a result of a back injury, depression and numbness in both legs.  *PageID* 232.  The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

     A video hearing was held on February 5, 2013, at which plaintiff, represented by counsel, appeared and testified, as did Larry Ostrowski, Ph.D., who testified as a vocational expert.  In a decision dated February 28, 2013, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act.  *PageID* 60-80. That decision became the final decision of the Commissioner of Social

Security when the Appeals Council declined review on June 27, 2013.  *PageID* 50-54.

Plaintiff was 38 years of age on his alleged disability onset date. *PageID* 78, 228.  He has a GED and a certificate in connection with a one-year course of training in a welding program.  *PageID* 95, 233.  Plaintiff has past relevant work experience as a construction worker, roofer, explosives truck driver, and general farm work.  *Id.*, *PageID* 65. Plaintiff meets the insured status requirements for disability insurance benefits through December 31, 2015.  *PageID* 65.  He has not engaged in substantial gainful activity since March 7, 2008, his alleged onset date of disability.  *Id.*

**II.  The Evidence of Record**

Plaintiff testified at the administrative hearing[1] that he lives with his wife and two children. *PageID* 93.  He has a driver's license but his wife does most of the driving.  *PageID* 94.  He is able to read, write, and perform simple arithmetic.  *PageID* 96.  Because he can no longer perform many activities, he has become depressed.  *PageID* 113. He thinks of hurting himself or others "[o]nce every couple of weeks maybe."  *Id*. He spends his days reading the paper, staring at the walls, and watching some television. *PageID* 107.  He is irritable and experiences anger outbursts and daily crying spells. *PageID* 113.  He has difficulty being around others; when he leaves his bedroom, his family runs and hides. *Id.* His wife helps him with his personal needs. *PageID* 108.  He vacuums occasionally but does not cook or mow the grass. He belongs to the VFW but goes there only to pay his yearly dues.  *PageID* 109.

---

[1] The administrative law judge found that plaintiff suffers from both physical and mental impairments. Plaintiff challenges only the Commissioner's evaluation of his mental impairments. *Statement of Errors*, *PageID* 536. The Court will therefore summarize only that evidence relevant to plaintiff's claims.

Plaintiff also testified to problems with concentration and memory. He has difficulty remembering how to spell words and has trouble recalling what he reads. *PageID* 112, 114.

In June 2011, David Bousquet, M. Ed., performed a consultative psychological evaluation for the state agency. *PageID* 384-91. Plaintiff reported that he had discontinued prescribed anti-depressant medication of his own accord because of its side effects. *PageID* 386. Plaintiff denied problems with concentration, but complained of memory problems. *PageID* 387. He reported that he watched TV, drove and attended church occasionally, read the newspaper, had occasional visitors, and belonged to the VFW, Eagles, and Legion, although he was not active in those organizations. *Id.* On clinical examination, Mr. Bousquet noted irritability and tearfulness. Plaintiff reported suicidal and homicidal ideation, feelings of guilt and worthlessness and lack of energy. He manifested limited eye contact, a sad mood, and anxiety. *PageID* 386. Plaintiff was oriented and his intellectual capabilities fell in the average range. *PageID 388*. Reasoning and judgment were appropriate. *Id*. Mr. Bousquet diagnosed major depressive disorder, recurrent, without psychotic features; he assigned a Global Assessment of Functioning ("GAF")[2] score of 55, which is indicative of moderate dysfunction. *PageID* 389.

According to Mr. Bousquet,

> The results [of the examination] indicate that the claimant would be able to understand, remember and carry out instructions

---

[2] The GAF is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Commissioner*, 61 Fed.Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34.

> in the work setting consistent with other individuals who possess[] average intellectual capabilities and functioning.
>
> [Plaintiff] had very limited eye contact but was able to attend and concentrate on the conversation. [Plaintiff] reported that when working he did not experience any significant problems with persistence and pace. [Plaintiff] has problems with persistence and pace and is easily fatigued and tired and has problems with motivation and is lethargic and experiences anhedonia. Evidence obtained indicates that [plaintiff] would experience a sense of reduced effectiveness in persistence and pace because of depressive symptoms.
>
> [Plaintiff] had some problems relating with this examiner and was irritated with the office manager. He maintained limited eye contact. [Plaintiff] denied problems relating with coworkers and supervisors when working. The findings indicate that [plaintiff] will have problems with conforming to social expectations in the work setting.
>
> [Plaintiff] reports being involved with behavioral health counseling. [Plaintiff] currently has problems with stress and pressure. [Plaintiff] did not report an inability to adjust to work place demands and exposure. He is now having problems with stress and pressure and is easily frustrated and annoyed and will act them out. He did not exhibit anger during the interview but was annoyed. [Plaintiff] is expected to have problems responding appropriately to work place pressures.

*PageID* 390.

In July 2011, state agency psychologist Carl Tishler, Ph.D., reviewed the evidence and opined that the record documented mild limitations in activities of daily living, moderate limitations in maintaining social functioning, mild limitations in maintaining concentration, persistence or pace, and no episodes of decompensation. *PageID* 130. According to Dr. Tishler, plaintiff was limited to simple, repetitive tasks in a setting that requires limited social interaction and presents only low stress demands. *PageID* 133-34.

State agency psychologist David Dietz, Ph.D., reviewed the record in October 2011 and concluded that plaintiff was capable of completing 3 to 4 step tasks in a low stress work setting where production standards and

schedules are flexible; plaintiff was capable of maintaining superficial social interactions. *PageID* 146-47.

In March 2011, plaintiff underwent an assessment by John Heilmeier, LISW, in connection with his Worker's Compensation claim. Mr. Heilmeier characterized plaintiff's mood and affect as moderate with depressive tendencies. Plaintiff manifested depressive symptoms, psychomotor retardation, difficulty concentrating, isolation from family and friends, and irritability. Mr. Heilmeier diagnosed major depressive affective disorder, recurrent episode, moderate degree. *PageID* 367. *See also PageID* 275. The following month, plaintiff reported irritability, difficulty sleeping, poor self-esteem, crying spells, low energy, poor appetite, poor concentration and poor long-term memory. *PageID* 368. Mr. Heilmeier noted a depressed mood and affect. Plaintiff was fully oriented, had relevant, goal-directed, and coherent speech; there was no unusual or circumstantial thinking. *Id.* There was no evidence of psychosis, phobia, obsessive-compulsive behaviors, or hallucinations. *Id.* Mr. Heilmeier diagnosed moderate depression and recommended that plaintiff "not return to work at this time." *PageID* 369. In January 2012, Mr. Heilmeier reported that plaintiff's activities of daily living, which had been limited by plaintiff's depression and work injuries, were unchanged; plaintiff's psychomotor retardation and poor concentration had improved; plaintiff's severe limitations in social functioning had improved; and plaintiff's poor stress management and coping skills had improved. *PageID* 276.

In March 2012, Marian Chatterjee, Ph.D., (apparently a colleague of Mr. Heilmeier), noted a worsening of plaintiff's condition. Symptoms included a depressed mood, poverty of speech, very poor adaptation, poor tolerance for stress, social impairment, poor persistence and pace, and

5

cognitive rigidity. Dr. Chatterjee recommended psychiatric treatment "as he is severely depressed and angry." She further noted, "... this man is far to [sic] impaired to tolerate vocational rehabilitation or demands of any kind." *PageID* 463. In April 2012, plaintiff reported to Mr. Heilmeier that "he felt better than he had in past." *PageID* 459. In both April and May 2012, Mr. Heilmeier noted that plaintiff's condition was "[i]mproved" although his prognosis remained "[p]oor." *PageID* 455, 459. In June 2012, Lee Roach, Ph.D., noted that plaintiff's condition had improved and that his prognosis was "[f]air." *PageID* 453.

Plaintiff underwent a psychiatric assessment by Ajay Sharma, M.D., in June 2012. *PageID* 517-18. Plaintiff presented with a depressed mood, a constricted affect, tearfulness, poor insight and poor judgment. Plaintiff denied suicidal or homicidal ideation. Dr. Sharma diagnosed major depressive disorder, recurrent and moderate, and assigned a GAF score of 50, which is suggestive of serious dysfunction. Dr. Sharma adjusted plaintiff's medications over the next six months with some improvement in his sleep and frustration tolerance. *PageID* 513-16.

In October 2012, Mark Querry, Ph. D., examined plaintiff at the request of the Bureau of Worker's Compensation. *PageID* 444-49. Dr. Querry noted that plaintiff made appropriate eye contact and that his speech was normal. *PageID* 445. Plaintiff's immediate, recent, and remote memory were intact, his concentration was intact although strained at times, and his reasoning skills were adequate for executing daily tasks. He had adequate insight, average intelligence, goal directed thoughts, and no hallucinations, obsessive thoughts, or delusions. *Id.* His mood was depressed and his affect was congruent. *PageID* 445-46. According to Dr.

6

Querry, plaintiff's treatment had reached the point that no functional change could be expected. *PageID* 448. Dr. Querry concluded that, from a psychological standpoint, plaintiff could work in a job where he did not have to engage in "critical decision making, elongated concentration demands, moving parts or materials with high temperatures. He should be afforded two brief rest breaks, not to include his lunch break, due to his low energy reserves." *Id*.

At the administrative hearing, the vocational expert was asked by the administrative law judge to assume a claimant with plaintiff's vocational profile and a residual functional capacity ("RFC") for limited sedentary exertion and "unskilled, simple, routine [work], with only occasional contact with supervisors, coworkers, or the public, with no rapid production quotas." *PageID* 119. In response, the vocational expert testified that such a claimant could perform work that exists in significant numbers in the regional economy. *PageID* 120. In response to inquiry by plaintiff's counsel, the vocational expert testified that certain of the limitations articulated by Mr. Bousquet (*i.e.,* "reduced effectiveness in persistence and pace," "problems with conforming to social expectations in the work setting," and "problems responding appropriately to work place pressures") did not provide enough information to "make a vocational determination." *PageID* 122. However, the vocational expert testified, a person who is off-task more than 10 percent of the work day "would lose their job." *PageID* 123.

### III.
### Administrative Decision

In his decision, the administrative law judge found that plaintiff's severe impairments consist of degenerative disc disease of the lumbar spine, status post-laminectomy associated with post-laminectomy syndrome; obesity; and major depressive disorder, recurrent without psychotic features. *PageID* 66. The administrative law judge also found that plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment, including Listings 1.04 and 12.04. *PageID* 66-68. The administrative law judge next found that plaintiff has the RFC for a limited range of sedentary exertion and, from a mental standpoint, for unskilled, simple, routine work involving no more than occasional contact with supervisors, coworkers, and the public and imposing no rapid production quotas. *PageID* 68.

In determining plaintiff's RFC, the administrative law judge accorded "significant weight" to the consultative opinions of Mr. Bousquet and Dr. Querry, finding their assessments to be generally consistent with the evidence of record. *PageID* 77. He also gave "partial weight" to the opinions of the state agency reviewing psychologists, Drs. Tishler and Dietz, and to the limitations founds by Mr. Heilmeier, plaintiff's treating mental health counselor. *Id.*

In assessing plaintiff's subjective symptoms, the administrative law judge found that plaintiff's testimony was not fully credible and did not support the severity of plaintiff's allegations as to his depression and mental limitations. *PageID* 70.

The administrative law judge relied on the testimony of the vocational expert to find that plaintiff's RFC as found by the administrative law judge permitted him to perform a significant number of jobs in the national economy despite his lessened capacity. PAGEID 78-79. Accordingly, the

administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from March 7, 2008, through the date of the administrative law judge's decision. PAGEID 79.

## IV.

### DISCUSSION

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth v. Comm'r Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005).

In his *Statement of Errors*, plaintiff contends, first, that the administrative law judge's RFC finding is unsupported by substantial

9

evidence. Specifically, plaintiff argues the opinions of the consultative examining psychologists to which the administrative law judge accorded "significant weight" were ambiguous and cannot support the RFC found by the administrative law judge. Plaintiff also challenges the administrative law judge's credibility assessment. *See* Doc. No. 17 at *PageID* 540-49.

A claimant's RFC is defined as the most that a claimant can do despite his or her limitations. 20 U.S.C. §§ 404.1545(a)(1). At the administrative hearing stage, it is the administrative law judge who is charged with determining a claimant's RFC. 20 C.F.R. §§ 404.1527(e)(2), 404.1546(c). In making that determination, the administrative law judge must evaluate all the medical evidence as well as the claimant's testimony. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629 633 (6th Cir. 2004); SSR 96-5p, SSR 96-8p. Thus, an ALJ does not act improperly merely by assessing the medical and non-medical evidence when determining a claimant's RFC. *Poe v. Comm'r of Soc. Sec.,* 342 F. App'x 149, 157 (6th Cir. 2009).

In determining that plaintiff had the RFC for unskilled, simple, routine work that involves no more than occasional contact with supervisors, coworkers and the public and which imposes no rapid production quotas, the administrative law judge expressly considered the various findings and opinions reflected in the record. *See, e.g., PageID* 71-72. The administrative law judge accorded "significant weight" to the opinions of Mr. Bousquet and Dr. Querry, finding that those opinions were "generally consistent" with the evidence and that RFC. *PageID* 77. The administrative law judge accorded "partial weight" to the assessments of state agency reviewing psychologists Drs. Tishler and Dietz, but found that plaintiff was "more limited overall than opined by" these doctors. *Id.* The

10

administrative law judge also accorded "partial weight" to Mr. Heilmeier's assessments. *Id.*

Plaintiff complains that the opinions of Mr. Bousquet and Dr. Quarry were ambiguous in terms of the extent of plaintiff's ability to perform work-related functions and therefore cannot support the administrative law judge's RFC determination. However, as noted *supra*, an administrative law judge's determination of a claimant's RFC must be based on a fair consideration of all the evidence. In the case presently before the Court the administrative law judge gave fair consideration to all the relevant evidence, including Mr. Bousquet's opinion that plaintiff "would be able to understand, remember and carry out instructions in the work setting," Dr. Querry's opinion that plaintiff's memory and concentration were intact, that his reasoning and insight were adequate and that plaintiff could work, and Dr. Sharma's and Mr. Heilmeier's notations of improvement with treatment. Even though none of the mental health professionals rendered an opinion in the express terms utilized by the administrative law judge, whose duty it is to determine the RFC, the administrative law judge's RFC determination in this case nevertheless enjoys substantial support in the record.

Plaintiff also challenges the administrative law judge's credibility determination. An administrative law judge is not required to accept a claimant's subjective complaints, but may instead properly consider the credibility of a claimant. *See Walters v. Commissioner of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Because the administrative law judge has the opportunity to observe a witness' demeanor while testifying, his credibility determinations are accorded great weight and deference. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001). However, credibility

11

determinations must be clearly explained.  *Auer v. Secretary of Health and Human Servs.,* 830 F.2d 594, 595 (6th Cir. 1987).  If the administrative law judge's credibility determinations are explained and enjoy substantial support in the record, the Court is without authority to revisit those determinations.  *See Beavers v. Secretary of Health, Educ. and Welfare,* 577 F.2d 383, 386-87 (6th Cir. 1978).  *See also Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994).

Plaintiff complains that the administrative law judge unfairly based his credibility determination on plaintiff's testimony regarding his education and delay in seeking mental health treatment. However, the fact that plaintiff would interpret this evidence differently than did the administrative law judge does not mean that the deference usually accorded an administrative law judge's credibility determination should be denied in this case.  In any event, however, the administrative law judge also based his credibility determination on inconsistencies in plaintiff's testimony and his description of daily activities. *See PageID* 67, 69.  The administrative law judge's credibility findings were clearly articulated and enjoy substantial support in the record. Under these circumstances, this Court is without authority to disturb those findings.

It is therefore **RECOMMENDED** that the decision of the Commissioner be affirmed and that this action be dismissed.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically

designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Date: May 15, 2014                                  *s/Norah McCann King*
                                                    Norah McCann King
                                                    United States Magistrate Judge