```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

Charles O. Keen,

    Plaintiff,

    v.                         Case No. 2:13-cv-781

Carolyn W. Colvin,
Acting Commissioner of
Social Security,

    Defendant.

ORDER

    Plaintiff Charles O. Keen brings this action under 42 U.S.C. §§405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits.  The ALJ reviewed the medical evidence in the record, and held a video hearing, at which plaintiff and a vocational expert testified. In a decision dated February 28, 2013, the administrative law judge ("ALJ") found that plaintiff had severe impairments consisting of degenerative disc disease of the lumbar spine, status post-laminectomy associated with post-laminectomy syndrome, obesity, and major depressive disorder, recurrent without psychotic features. PAGEID #66.  After considering the entire record, the ALJ found that plaintiff has the residual functional capacity ("RFC") to perform sedentary work with certain physical limitations, and with the further requirements that plaintiff's employment consist of unskilled simple routine work with no more than occasional contact with supervisors, co-workers, and the public, and with no rapid production quotas. PAGEID #68.  Plaintiff filed a statement of errors which challenged only the Commissioner's evaluation of his mental impairments.  Doc.

17, p. 3.

This matter is before the court for consideration of plaintiff's May 29, 2014, objections (Doc. 23) to the May 15, 2014, report and recommendation of the magistrate judge (Doc. 22), recommending that the court affirm the decision of the Commissioner. For the reasons stated below, the court overrules plaintiff's objections and adopts the magistrate judge's report and recommendation.

I. Standard of Review

If a party objects within the allotted time to a report and recommendation, the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Put another way, a decision supported by substantial evidence is not subject to reversal, even if the reviewing court might arrive at a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). "Substantial evidence

exists when 'a reasonable mind could accept the evidence as adequate to support a conclusion [and] . . . presupposes that there is a zone of choice within which the decision-makers can go either way, without interference by the courts.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal citation omitted). Even if supported by substantial evidence, however, "'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

II. Objections

A. Sufficiency of ALJ's Determination of Plaintiff's RFC

Plaintiff alleges that the magistrate judge failed to address his argument that the ALJ failed to adequately explain his consideration of ambiguities and inconsistencies in the various expert reports in arriving at his assessment of plaintiff's RFC. A claimant's RFC is the most that a claimant can do despite his or her limitations. 20 U.S.C. §404.1545(a)(1). The ALJ is charged with determining a claimant's RFC. 20 C.F.R. §§404.1527(e)(2) and 404.1546(c). In making that determination, the ALJ must evaluate all the medical evidence as well as the claimant's testimony. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004).

The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. SSR 96-8p, 1996 WL 374184 at *7 (Soc. Sec. Admin. July 2, 1006). "The adjudicator

3

must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* However, an ALJ need not discuss every piece of evidence in the record for his decision to stand. *Thacker v. Comm'r of Soc. Sec.*, 99 F.App'x 661, 665 (6th Cir. 2004).

> While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that: "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts."

*Kornecky v. Comm'r of Soc. Sec.*, 167 F.App'x 496, 508 (6th Cir. 2006)(quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)(citations and internal quotation marks omitted)). Further, plaintiff cites no authority which requires the ALJ to phrase his RFC assessment in terms which are identical to those used by treating physicians and evaluators in their reports.

In determining plaintiff's RFC, the ALJ gave significant weight to mental assessments by David Bousquet, M.Ed., who performed a state agency consultative evaluation on June 24, 2011, and Mark Querry, Ph.D., who performed an independent psychological evaluation for the Bureau of Workers' Compensation on November 6, 2012. PAGEID #77. The ALJ gave partial weight to the mental assessments of two non-examining state agency psychologists, Carl Tishler, Ph.D. and David Dietz, Ph. D., noting that the objective evidence in the record indicated that the combination of plaintiff's impairments caused him to be more limited overall than

4

opined by these psychologists. PAGEID #77. The ALJ also gave partial weight to the mental limitations assessment of John Heilmeier, LISW, a licensed social worker who treated plaintiff. PAGEID #77. The ALJ gave little weight to the global assessment score of 50 (suggestive of serious dysfunction) assigned to plaintiff by Ajay Sharma, M.D., a treating psychiatrist who first evaluated plaintiff in June of 2012. PAGEID ##71, 78. The ALJ noted that the global assessment was based on subjective complaints, and was inconsistent with the objective evidence in the record that plaintiff had no more than moderate mental limitations. PAGEID #78.

Plaintiff argues that the ALJ failed to adequately address inconsistencies and ambiguities in the evidence between the opinion sources given significant weight. However, he does not identify in his objection what those inconsistencies and ambiguities were. Plaintiff argued before the magistrate judge that the opinions of Mr. Bousquet and Dr. Querry were too vague and ambiguous in that they failed to specify the extent of plaintiff's ability to perform work-related functions, and that those opinions do not support the ALJ's assessment of plaintiff's RFC.

In addressing Bousquet's June, 2011, report, the ALJ noted Bousquet's observations that although plaintiff was irritable and reported difficulties with appetite and sleep, depression, crying, moodiness, feelings of guilt and worthlessness, and suicidal and homicidal thoughts without intent or plan, his speech was normal, with organized associations. PAGEID ## 72, 386-87. Bousquet further remarked that: 1) plaintiff's affect was appropriate to nature and content; 2) his speech was understandable, sustainable

5

and goal oriented with organized associations; 3) although plaintiff's mood was sad, his affect was appropriate in nature and content; 4) although plaintiff reported problems relaxing and showed signs of anxiety, he stated he did not worry and had no fears; 5) plaintiff was oriented to time, place, person, and situation, and exhibited no beliefs or manifestations of hallucinations or delusions; 6) plaintiff denied recurring obsessions or compulsions; 7) and plaintiff demonstrated an average range of intellectual capacities; and 8) his reasoning and judgment capacities were assessed as age appropriate. PAGEID ## 72, 387-90. Mr. Bousquet did not state in his evaluation that plaintiff was unable to work due to his mental problems.

> The ALJ noted that Bousquet
>
> found the claimant was able to carry out instructions in work setting, consistent with average intellectual capabilities and functioning. However, he assessed reduced effectiveness in persistence and pace because of depressive symptoms and problems conforming to social expectations in work setting and problems with work place pressures, which have been accommodated by the restrictions of the above-described residual functional capacity. Therefore, the above evidence sufficiently supports the claimant's ability to perform the mental/social work related activities of the above-described residual functional capacity.

PAGEID # 72. This discussion indicates that the ALJ considered Bousquet's report, and took into account Bousquet's observations concerning plaintiff's problems with persistence and pace, conforming to social expectations in the work setting, and responding appropriately to work place pressures, in formulating plaintiff's RFC, which required sedentary and unskilled simple routine work with no more than occasional contact with supervisors, co-workers, and the public, and with no rapid production quotas.

PAGEID #68.

Dr. Querry was asked by the Bureau of Workers' Compensation to evaluate plaintiff for the purpose of determining whether he was capable of returning to his former position of employment. PAGEID #444. Although Dr. Querry concluded that plaintiff could not return to his former job working in explosives and heavy construction, he found that plaintiff could

> work in a job role that is commensurate with his experience, education and training history. He should not be engaged in a job role where there is critical decision-making, elongated concentration demands, moving parts or materials with high temperatures. He should be afforded two brief rest breaks, not to include his lunch break, due to his low energy reserves at the present time.

PAGEID #448.

In addressing Dr. Querry's November, 2012, report, the ALJ observed:

> Dr. Querry noted the claimant's gait and posture were unremarkable, he was dressed appropriately, he was oriented in all four spheres, and he was cordial and cooperative. Further, his speech production and receptivity were unremarkable. In terms of cognition, executive functioning was intact, and he was assessed to have adequate decision-making capabilities. Moreover, he was assessed to have intact immediate, recent, and remote memory. Likewise, concentration was intact but strained. Further, Dr. Querry noted the claimant described a "depressed" mood and that his affect was mostly congruent with his stated mood. However, he noted there did not appear to be pre-existing depression, and the claimant denied suicidal/homicidal ideation, plan, and history of such. Additionally, he was noted to have adequate sleep with no signs or indication of history of mania or hypomania. Further, he denied symptoms commonly associated with anxiety disorder except for occasional shortness of breath, and he denied fears. In fact, Dr. Querry found the claimant did not indicate or exhibit compulsive behaviors, and he assessed the claimant had reached a treatment plateau that was static or well

> stabilized. He found the claimant was unable to return to his former position of employment, which was compromised by mental functional capacity. Therefore, while the above evidence supports the above-noted mental impairments and functional limitations, it further supports the claimant's ability to perform the mental work related activities of the above, described residual functional capacity.

PAGEID #72.

This summary indicates that the ALJ considered Dr. Querry's report and the limitations discussed in that report in determining plaintiff's RFC. Dr. Querry's opinion is consistent with the ALJ's determination that plaintiff's RFC required sedentary and unskilled simple routine work with no more than occasional contact with supervisors, co-workers, and the public, and with no rapid production quotas. PAGEID #68. Dr. Querry's conclusions concerning plaintiff's abilities and work limitations are also consistent with Mr. Bousquet's findings, and the ALJ's decision indicates that he considered those limitations. The most obvious inconsistencies between the two reports are found in plaintiff's disavowal of symptoms during his 2012 evaluation by Dr. Querry which he earlier claimed to have during his 2011 evaluation by Mr. Bousquet. The ALJ's discussions of these evaluations indicate that he was aware of these discrepancies (which do not further plaintiff's arguments), yet the ALJ still took the functional limitations noted by both Mr. Bousquet and Dr. Querry into account in formulating plaintiff's RFC.

Plaintiff attempts to bolster his argument that the reports of Mr. Bousquet and Dr. Querry are vague and ambiguous and do not contain sufficient information to support the ALJ's RFC determination by noting counsel's examination of Dr. Larry

Ostrowski, the vocational expert, at the evidentiary hearing before the ALJ. After the ALJ posed a hypothetical question based on his proposed RFC to the expert to ascertain whether there were jobs in the regional economy which plaintiff could perform, plaintiff's counsel asked the expert to further assume "that the person would experience reduced effectiveness in persistence and pace" and "would also have problems conforming to social expectations in the work setting" and "responding appropriately to workplace pressures." PAGEID ## 121-22. Counsel then asked:

> Q. Given that, does that give you enough information to make a vocational determination?
> A. Well, not to give you a definitive answer. I believe these issues were addressed in the light hypothetical. The–let me see. You know, the judge–as far as the persistence and pace, the judge included in there the no rapid production–
> Q. Well, certainly. And–
> A. – which is essentially kind of that.
> Q Taking that part of it out of the judge's hypothetical, taking the mental health limitations out of that, and just assuming what I've just read to you as the mental health limitations or the non-exertional limitations, does that information just as stated give you enough information to make a vocational determination?
> A. No.

PAGEID #122. In light of this confusing hypothetical, which highlighted only isolated portions of the evaluators' reports, it is not surprising that the vocational expert indicated that he did not have sufficient information to make a vocational determination. The vocational expert was called to testify concerning the availability of jobs which could be performed by a person with the hypothetical RFC posed by the ALJ, not to give an opinion concerning whether the medical record supported that RFC. This line of testimony does not establish that the opinions of Mr.

9

Bousquet and Dr. Querry, when considered in their entirety, were too vague or ambiguous to provide support for the ALJ's RFC determination.

The ALJ also adequately addressed the other mental health evidence in the record. The ALJ discussed the treatment records of plaintiff by Mr. Heilmeier, noting that Heilmeier's assessment of "moderate depressive mood tendencies/major depressive affective disorder, recurrent, moderate, [was] inconsistent with a totally disabling mental condition." PAGEID # 70. The ALJ observed that in April, 2011, Mr. Heilmeier assessed plaintiff's behavior and social presentation as being generally within normal limits. In February and April, 2012, Heilmeier noted that plaintiff had ongoing symptoms of depression, anger, and irritability, but he further observed in April, May and June of 2012 that plaintiff's mood had improved. PAGEID #71. The ALJ stated that "this evidence supports the claimant's ability to perform the work related activities of the above-described residual functional capacity." PAGEID #71. Although the ALJ rejected the global functioning assessment score assigned to plaintiff by Dr. Sharma, he discussed Dr. Sharma's treatment notes from August through November of 2012, which indicated that plaintiff was responding well to prescription medication and reported ongoing improvement with his sleep and his frustration tolerance. PAGEID #71.

The ALJ's decision is sufficiently detailed to provide a meaningful review of the ALJ's RFC assessment, and no violation of SSR 96-8p has been shown. This court agrees with the finding of the magistrate judge that the ALJ's RFC determination "enjoys substantial support in the record." Doc. 22, p. 11. This

10

objection is denied.

B. ALJ's Discussion of Plaintiff's Credibility

"[T]he extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements."  SSR 96-7p, 1996 WL 374186 at *4 (Soc. Sec. Admin. July 2, 1996).  In considering a claimant's statements as evidence bearing on the issue of disability, the ALJ must assess the claimant's credibility.  *Id.*  In his second objection, plaintiff argues that the magistrate judge erred in rejecting his arguments concerning the ALJ's assessment of his credibility.  Specifically, plaintiff contended below that the ALJ unfairly based his credibility determination on plaintiff's testimony regarding his education and his delay in seeking mental health treatment.

In addressing these issues, the ALJ stated:

> Further, the undersigned finds inconsistencies in the claimant's testimony regarding his education as compared to his reported statements to his evaluators that raise questions as to the credibility of his overall allegations. For example, the claimant testified that he finished 10th grade in school, he did not graduate, but that he received a GED. Additionally, he stated he did not go to college but that he had welding courses/training in 1989 or 1991. Further, although he reported to his consultative evaluator that he attended a technical college where he studied welding for one year and that he obtained a certificate, he further reported that he graduated from high school, which is inconsistent with his testimony.  (Exhibit 10F).  Likewise, he reported to another evaluator that he graduated from high school and that he attended college for one year. (Exhibit 12F) Consequently, the above evidence reveals inconsistencies that detract from the credibility of his overall allegations.
>
> Additionally, while the claimant alleged debilitating depression and mental limitations since March 2008

11

>  (Exhibit 2E), the treatment evidence does not support the
>  severity of his allegations.  For example, the evidence
>  indicates the claimant underwent mental health counseling
>  with a licensed social worker/counselor for his mental
>  impairments in 2011 and 2012, but there is no indication
>  he underwent consistent mental health therapy prior to
>  that time.  Moreover, the evidence indicates he did not
>  seek treatment with a mental health doctor until June
>  2012.  (Exhibits 1F, 8F, and 13F)  Consequently, this
>  evidence detracts from the severity of his allegations.

PAGEID #70.

Plaintiff contends that the ALJ misrepresented his educational history.  However, the statements regarding plaintiff's educational background made by the ALJ in his opinion are supported by the exhibits he cites and by plaintiff's testimony at the hearing.  Plaintiff's testimony at the video hearing was difficult to follow and self-contradictory.  After stating that he did not graduate from high school, but rather that he had a GED, plaintiff testified:

>  Q  You said you went to college for a year.
>  A  Yes.
>  Q  What did you study?
>  A  Welding.
>  Q  Well, I'm showing welding in '91, but college in
>     '89.  Did you do both?
>  A  No.  '89 would have been the year that I graduated
>     high school.
>  Q  Well, you told me you only went to the 10th grade.
>  A  Well, I said –
>  Q  Help me out here.  I'm really confused here.
>  A  I said that would have been the year I graduated
>     high school.
>  Q  Okay.  But in your paperwork you said you had one
>     year of college in 1989, and you had welding
>     training in '91.
>  A  That's a mistake on my part then.
>  Q  All right.  So no college, and welding in what
>     year, '89?
>  A  I'm not real sure now.  Either one of the two.

PAGEID #95. Even plaintiff acknowledged in his statement of errors that plaintiff's reporting of his educational background included terminology that "was unorthodox." PAGEID #548. As noted by the magistrate judge, "the fact that plaintiff would interpret this evidence differently than did the administrative law judge does not mean that the deference usually accorded an administrative law judge's credibility determination should be denied in this case." Doc. 22, p. 12.

   Plaintiff also notes a provision in SSR 96-7p which states that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment *without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.*" SSR 96-7p, 1996 WL 374186 at *7 (emphasis supplied). Plaintiff alleges that the ALJ should not have drawn an adverse credibility inference from the fact that he did not seek mental health treatment until 2011, because any such treatment had to be authorized by the Bureau of Workers' Compensation. However, plaintiff points to no evidence in the administrative record that he made a request to the Bureau for mental health treatment prior to 2011 which was denied, or that he offered that or any other explanation to the ALJ as the reason for his delay in seeking mental health counseling after his surgery in 2008. No violation of SSR 96-7p has been shown.

   As noted by the magistrate judge, the ALJ also based his credibility determination on other inconsistencies in plaintiff's

13

hearing testimony and his description of daily activities. Doc. 22, p. 12. In determining whether plaintiff had any listed impairments, the ALJ noted that although plaintiff testified that he spends his days reading the paper, staring at the walls, and watching a little television, he "conversely testified that he runs a sweeper every once and a while, which seems inconsistent with the severity of his allegations." PAGEID #67. Plaintiff testified that he does not cut the grass, but reported in May, 2011, that he cuts the grass. PAGEID #67. The ALJ also stated that although plaintiff testified at the hearing that he has social difficulties being around others and does not go to the store, he reported in May, 2011 that he occasionally goes to the store, attends church and entertains visitors. PAGEID #67. The ALJ further observed that although plaintiff testified at the hearing that his memory problems were so severe that he sometimes had to think how to spell his name, plaintiff also testified that he is able to read, write, and perform simple arithmetic, that he reads for enjoyment, and that he was able to recall information at the hearing concerning his activities, impairments and treatment. PAGEID #67. The ALJ also noted inconsistencies in plaintiff's testimony concerning his physical capabilities. PAGEID #69.

This court agrees with the determination of the magistrate judge that the ALJ's credibility findings "were clearly articulated and enjoy substantial support in the record." Doc. 22, p. 12. Plaintiff's objection is denied.

III. Conclusion

Having reviewed the record *de novo*, the court determines that there is substantial evidence supporting the ALJ's determination

that plaintiff is not disabled, as defined in the Social Security Act.  Accordingly, the court overrules plaintiff's objections (Doc. 23) and adopts and affirms the magistrate judge's report and recommendation (Doc. 22).  The Commissioner's decision is affirmed, and this action is dismissed.

    Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the clerk shall enter final judgment affirming the decision of the Commissioner and dismissing this action.


Date: July 9, 2014                                             s/James L. Graham
                                                        James L. Graham
                                                        United States District Judge